My name is Corey Franklin and I represent the appellant, Midwest Division-RMC, LLC, which does business as Research Medical Center. Throughout my argument this morning, I'm going to refer to my client, alternatively, as perhaps Research of the Hospital, and APA Lee as NNU or the Union. Perhaps I may fall into labor lawyer's parlance and refer to our collective bargaining agreement as a CBA, and I apologize if that occurs, but that is the reference. This is a fairly straightforward case. The matter concerns the union's position that a general presumption of arbitrability trumps what is a rather exhaustively bargained and drafted provision on staffing in Article 38 of the party's collective bargaining agreement that specifically and unequivocally excludes disputes or disagreements relating to staffing from arbitration. This matter arose after the hospital, which under the aforementioned Article 38, developed staffing plans which cover the nurses and other technical professional and non-professional, when I say that, I refer to technical employee staff and clerical staff that work on its hospital units. They developed these staffing plans in June of 2020, and in July of 2020, less than 15 days or so after their implementation by the hospital, the union filed a grievance. The nature of the grievance was pretty straightforward, and I don't think with any doubt it certainly at a minimum would relate to a disagreement over staffing. As found at Appendix 96, the grievance asserts the hospital intends to displace bargaining unit RNs with supervisory RNs in the performance of bargaining unit work as expressed in the hospital's staffing grids that they implemented on June 28, 2020. After receiving this grievance, the hospital, of course, promptly denied it, citing the verbiage in Article 38, in particular, 38F, which is found in Appendix 48, to assert that the matter is entirely inalbitable. Moreover, that the grievance as purported to be submitted by the union was not exactly that, because it stated an intent to violate the contract as opposed to an actual violation of the contract. As a result, on those two grounds, the grievance was refused. The union sued to have the matter arbitrated. Parties filed cross motions for summary judgment. The union filing it first in February of 2021. My client filing shortly thereafter in March with Judge Boo in the Western District of Missouri issuing a ruling on April 28 of last year. Ultimately, this review de novo really critically hits four key subjects. First, the union's grievance plainly asserts a disagreement arising from the hospital's exercise of its staffing rights, which are broadly stated and expressly exclude any challenge in arbitration under Article 38 of the Collective Bargaining Agreement. No matter how the union chooses to label its dispute, or try to relate it back to some other provision of the contract, whether it's Article 3, as it asserts, or some other article, no matter how it tries to portray that grievance, it is, without question, relating to a disagreement about the hospital's exercise of its broad staffing rights, and arises from, on its face, the hospital's implementation of staffing grids with respect to the assignment of bargaining unit nurses. Counsel, if I understand the position of the appellees, they refer to a portion of the agreement that specifically addresses the relationship between supervisory R.N.s and the bargaining unit R.N.s, and that that provision of the CBA, if you will, is what's at issue here, and it's that provision that creates a dispute that's arbitrable in terms of the relationship between the R.N.s who are part of the bargaining unit and the supervisory R.N.s. Thank you, Judge Smith. If I may, even if we were to assume that that were true, and I don't concede that, to be clear, Section 2, under use of terms in the Recognition Clause of the Collective Bargaining Agreement, defines occasions when we are talking about bargaining unit nurses, right? And when we look at Article 38, Article 38 is far broader than just bargaining unit nurses and encompasses circumstances where the hospital is making staffing decisions with respect to a wide variety of employees, inclusive of, but by no means limited to, supervisory and managerial clinical nurses. That would also include technical staff, and their performance of work is well within the ambit of our broad authority, and should we exercise that, whether there is a reference in Article 3 to an intent to principally rely on the use of bargaining nurse labor in the course of staffing our hospital, that statement of intent is by no way overriding the Management Rights Clause or Article 38, which give us the broad ability to utilize other individuals to perform those functions. I just have a question. I didn't mean to interrupt you, I'm just an impatient man, sorry. But let me ask the question. I had a fact question as I went through and kept studying the record. One of the issues I had was whether or not all supervisory nurses, clinical supervisory nurses, are in fact not members of the bargaining unit. Is that a true statement? That is true. If they are truly supervisory in their function, they are not members of the bargaining unit. As I was about to say, the collective bargaining agreement has explicit language that authorizes the hospital to assign clinical nursing duties to those supervisory and managerial nurses, both in some clarifying language in Article 3, which is the provision that the union relies upon, but more importantly in the Management Rights Clause in Article 19, which says that we have the sole exclusive and unilateral right to make those types of assignments. Then back in Article 38, as I was alluding to, that language speaks in terms of the level of staff. We have the right to make changes to the staffing plan, to make a determination as to the level of staff that can most appropriately provide the type of care needed for our patients. It doesn't speak specifically to bargaining unit members or employees or RNs or nurses or registered nurses, as those terms are specifically defined in our contract. When you look at the Recognition Clause, or for that matter, the rest of the contract, there are not a lot of defined terms. Of the terms that are specifically defined, it is who is a bargaining unit member. In that regard, we believe that the staffing provision in Article 38, which we spent obviously a good amount of ink and a fair amount of time, energy, and effort bargaining for very critical reasons to the rendition of care, ensures that we have the broad right to exercise that managerial prerogative to assign supervisory nurses as appropriate. As you'll note in Article 38, I believe it's G, that the hospital is recognized, consistent with Article 19, which again is the management rights provision, as maintaining the ultimate financial, operational, and legal responsibility of providing appropriate staffing. Juxtaposed against Article 19 and our unequivocal rights in that regard, our broad authority as it relates to staffing, I don't think that there is any reasonable construction of the union's grievance to say that it doesn't relate to a disagreement over staffing, which whether it cites Article 3 or not, explicitly is precluded under 38F of the collective bargaining agreement. I want to turn back to Article 19 because it's got some rather amorphous terms in it that I'm trying to figure out just exactly how a hospital is relying on them. The first one is the qualifications and identity of employees who may be assigned any particular shift language. The second one is job classifications. Really, I think that if you follow what my question really is, are these a place where you are drawing a distinction between the union employees and the non-union employees, or is that something else? To a degree, you're correct, Your Honor, because on any particular nursing floor, you'll have patient care assistants, health unit coordinators, unit clerks, therapists, diagnostic technicians, LPNs, an entire universe of folks that are part of a care team. From time to time, there are non-RN functions that an RN will be asked to perform. We have the right to direct those nurses to perform those functions, and conversely, although a nurse may assist with cleaning a patient or cleaning a patient room because of a lack of EBS support, that doesn't preclude us from having other folks do that work. Specific to Article 19, however, there is, in Section 2E, the language that says to assign or allow registered nurses employed in supervisory or managerial positions to perform clinical-related nursing. Irrespective of any other language in that Management Rights Clause that the court may view as novel or ambiguous, because that provision in and of itself is relatively clear on its face, I would submit. Thank you. I appear to be into my, unless I'm misreading my light. You're correct. You're within your rebuttal. You can continue if you like or reserve. I'll pause here and reserve the remainder. Thank you, Your Honor. Thank you, Mr. Franklin. Mr. Baruch. Yes, ma'am. Please, the court, Your Honors. Good morning, Your Honors. I think the only thing I would agree with what Mr. Franklin said is that this is a rather straightforward case, although I see it completely the other way, as you can see from the briefing. And I just wanted the outcome. Counsel, we're having problems with your audio. You may want to get your mic a little closer or it's gained up just a bit. Now you're muted. There we go. How is that? That's better. Okay. So at the outset, I'd just like to note, Your Honors, that Mr. Franklin's argument that the Staffing Committee provision somehow allows it to assign bargaining unit work to supervisory nurses or other personnel at will. This was raised for the first time in the reply brief. It was not in the opening brief by Collins, nor was it briefed at this court. And it should be disregarded by this court under this court's precedent. Needless to say, it's a nonsensical argument as well because, and just to address it quickly so that there's no doubt to it, there would be no point of having the Article 3 bargaining unit work preservation provision that has the limited circumstances in which supervisory nurses can perform bargaining unit work if Article 38, combined with management rights, somehow allows the hospital to carte blanche assign work to supervisory personnel instead of the bargaining unit. So I just wanted to get that out of the way. Counsel, would you repeat again which specific argument you're saying was raised for the first time in the reply brief? That the Article 38 staffing committee article, as it combines with the recognition clause, was raised for the very first time in the reply brief to the point that the hospital has such broad staffing rights and has no limitation to who it assigns a bargaining unit work to so long as it's done by way or revealed by way of a staffing plan. That was raised for the first time in the reply brief. Thank you. You're welcome, Your Honor. And just to add some background as I continue here, as this court is very well aware, by its own precedent and Supreme Court precedent, it's a very strong presumption under federal law for the arbitration of labor disputes for decades, going back to the Supreme Court trillium, for the interest of fostering labor peace. This is so much so that the agreement merely needs to be susceptible to an interpretation that it is arbitrable, especially when you have a very broad arbitration provision. And in order to arbitrate should issue, unless it can be said, as Your Honors are aware, with positive assurance that the agreement is not arbitrable, as shown by the most forceful of evidence, clearly has not been done here. Doubts to be resolved in favor of arbitrability. And here I'll just note that this court correctly found that the grievance on its face alleged a violation of the decree by challenging the issue of who is doing the work. We're not challenging the staffing level. We're not challenging how many patients are assigned to nurses, ratios, things like that, that are covered by Article 38, that we acknowledge and have used the mediation provision. This, Your Honor, is the first time that the hospital has, by way of a staffing plan, assigned the bargaining unit work to supervisory nurses in a staffing plan that, depending on the department, will last for a year or sometimes two years. So it's a completely end-run around the bargaining unit work preservation article that effectively writes it out of the contract. And as the judge found, also correctly, that there's no exclusion of Article 3, Displacement of Bargaining Unit Work, in the arbitration provision or in the grievance provision. And it seems with Mr. Franklin and the hospital, is if this grievance is somehow on the Trojan horse to attempt to arbitrate a violation of Article 38, the basic logic just doesn't support their position, Your Honor. If you read Article 38 in its entirety, it clearly involves only a duty-based nurse-to-patient staffing level. The ratio of patients to bargaining unit nurses, not the identity of who's performing the work. Supervisory nursing, bargaining unit, getting to a question raised earlier by Dr. F. And even if Article 38, for the sake of argument, was not sought to cover acuity-based nurse-to-patient staffing. Clearly, Article 38, in no manner, addresses bargaining unit work preservation, which is the subject of the grievance. That's covered by Article 3, which is not excluded from the arbitration provision. And just to read from Article 38, Section 1. Counsel, if you'll speak directly to your mic, I think you can help us out. It seems you cut out, or we're not able to hear you when you speak away from your microphone. I'm sorry, Your Honor. I was looking for the appendix page for Article 38, and I was gonna just read from that. So it's pages 47 to 49 in the appendix. It provides, in the relevant part, that quote, disagreements regarding issues covered by this article, that's Article 38, including disagreements related to staffing levels are not subject to the grievance. Yay, and rather go to mediation. It must be stressed that including disagreements related to staffing plans is a subset of disagreements covered by Article 38. And so any staffing plan related dispute that would go to mediation would necessarily have to be a dispute that had to do with Article 38, which is not what we're raising. We're not challenging the proper staffing levels. We're challenging who is getting the work, because this is having the effect of a mini layoff on the bargaining unit. So had the parties intended, Your Honors, that any and all disagreements related to staffing plans, as Mr. Franklin says, are excluded from arbitration and only go to mediation, the language would have needed to be different in the contract, would have needed to say something like, disagreements regarding issues covered by this article, Article 38, as well as any and all disagreements related to staffing plans, not including staffing plans, if you follow my argument. I hope it's clear. Mr. Burrell, this is Jed Smith. I have another question. The appendix, the record in this case, includes the bargaining agreement in the Kansas case that involved the same hospital and its union nurses. Could you describe what the outcome of that case was and the difference in the agreements here? As I understand it, that case is now on appeal to the Tenth Circuit. If you could update us on the status of that and what bearing, if any, that case has on this one. Yes, thank you for that question, Your Honor. Yes, it is on appeal. It's pending appeal. The whole argument has been requested. It's not been screened yet. In the union's view, it was a deeply flawed decision where the district court enmeshed itself into the merit of the dispute, acted more like an arbitrator, trying to split the baby, saying that the union still had some rights if you go to mediation, and seemed to miss the court issue. But there were some differences. As Mr. Franklin points out in his briefing to this court, he had stated that the hospital... Unlike the CBA in that case, that being the District of Kansas case, the CBA, that issue in the Missouri litigation, this litigation, lacks specific language that clearly excludes disputes concerning non-bargaining, bargaining in a position, performing bargaining unit work from agreements and arbitration of the CBA. In that case, they relied much more heavily in their argument, and with due respect to the district court, I still think that their argument is not convincing, that language in the management rights clause in that contract, as well as the arbitration provision in that contract, which is not present here, made the case very different from this one. That case is fully briefed and pending appeal. Does that answer your question, Your Honor? Thank you, Mr. Baruch. Okay. And just continuing, I see I'm running out of time. I just want to, a couple more things. The hospital tries to argue that in this contract, the management rights clause in Article 38 would wind up having no meaning. I think that that is a ridiculous stretch of an argument. Article 38, again, goes to proper staffing levels in the interest of patient care. When we have disputes over that in the staffing committee, we go to mediation. We have done that before. We will do that again. This is a different animal, again. This is using the staffing plan to assign work to supervisory personnel. As far as the management rights provision, there are many rights listed throughout that provision. They are clearly, in effect, that this has nothing to do with. It should be pointed out that the management rights clause says, except as otherwise abridged by provisions of this agreement, the hospital shall have the right to blah, blah, blah. Article 3 is such an express abridgment. Okay, I'm getting too much. About the procedural arbitrability argument that the hospital is raising, that is not one for the court to decide as the president, as well as Supreme Court precedent. Procedural arbitrability issues are for the arbitrator. But in any event, the legislative staffing plan was implemented. So they have to choose where it ends. Once it was implemented, the action that was implemented, and the remedy sought, is to return the work to the bargaining unit nurses. So I think the procedural argument fails anyway, but in any event, it is one that is for the arbitrator. And I also just, when we're talking about constructing the contract so that all provisions have meaning, again, the hospital's construction would completely wipe out Article 3 from the contract. Their argument, their provisions would be nullified I deeply fall for the reasons that I say. In looking at contract construction in the federal labor law setting, as your honors are aware, since the Supreme Court Trilogy, federal common law is what is followed. And in that federal common law is the strong presumption in favor of arbitrability in order to preserve and enhance and foster industrial peace. And it is also in keeping with the nation's pro-arbitration policy in general. I will just conclude with, it cannot, under these facts, with the positive assurance that the hospital has produced forceful evidence that this grievance is excluded from the arbitration provision and the union has, the hospital has not met its burden. I rest, thank you. Thank you, Mr. Baru. Mr. Franklin, your rebuttal. You're muted. I apologize. I'll try to get through these as quickly as possible as there's a number of points that I believe require some rebuttal. First, as to the general presumption of arbitrability, of course there's a general presumption of arbitrability, but it's a rebuttable presumption. We not only have about four pages of contract language that speak to the broad scope of the hospital's ability to navigate and hold responsibility for the staffing of its facilities, but then other provisions of the contract that read in singularity with that language to justify its exercise of discretion in this case. That's first and foremost. We believe without question that there is a clear expression of the party's agreement to exclude these types of disagreements from arbitration, and it's found in Article 38F, and it could not be broader, and it could not, by any stretch, be interpreted in a way that would somehow carve out the opportunity for the union's grievance. I want to ask you a question about that. If that broad interpretation of 38G is given, what's left to arbitrate under Article 3? Honestly, Your Honor, it would be difficult for me to forecast all of the grievances that the union may bring, but as it relates to a staffing plan, there may certainly be, for example, an exception where the hospital would call in another supervisory nurse and violate a call-in provision that would be tied to yet another provision of the contract or something of that nature. It would be purely hypothetical for me to guess, but what I can say is that Article 38 contemplates the fact that there are going to be disputes, that there are going to be issues, and while the union is concerned about carte blanche rights of the hospital, one, it bargained this contract. Two, it agreed to a forum, something less than arbitration and mediation, to resolve those disputes, but it also bargained for itself the opportunity to be intimately involved in the decision-making process and to have a say and a seat at the table as we are coming up with these policy decisions that affect the operation of our hospital. They are not merely swinging in the wind waiting for an outcome, and I see my time is about to air down. Thank you, Mr. Franklin. Thank you also, Mr. Baril. The court appreciates both counsel's presentations to the court this morning and responding to our questions. We will continue to review the materials that have been submitted in conjunction with the case and render decision in due course. Thank you.